UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOSES PHILLIPS, M05907, | |
| Petitioner, | No. 12 C 07910 |
| v. | Judge Thomas M. Durkin |
| MINDI NURSE, Warden, Pontiac Correctional Center, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Moses Phillips, a state prisoner[1] currently serving a 75-year sentence for first degree murder, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging the ineffective assistance of trial counsel for failing to call alibi witnesses, insufficient evidence to convict, and failure of the trial court to comply with Illinois Supreme Court Rule 431(b). R. 1, 60. Respondent argues that Phillips's claims are procedurally defaulted. R. 34. For the following reasons, the petition is denied, and the Court declines to issue a certificate of appealability.

**Background**

### I. Trial Court Proceedings

Phillips was convicted of killing ten-year-old Siretha White in a drive-by shooting of a home where her birthday party was taking place on the evening of

---

[1] Phillips is now housed at Pontiac Correctional Center, so Mindi Nurse, Warden at Pontiac is the new Respondent. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held.").

1

March 11, 2006. He was also convicted of the attempted murders of Kevin Davis and Jamar Jenkins, two adults who were on the porch of the home, and of personally discharging a firearm. R. 35-1; *People v. Phillips*, No. 1-09-1948, 2011 WL 9698895, at *1–8 (Ill. App. Ct. Mar. 23, 2011).

Jenkins, Davis, Leon Cooks, Brent Perdue, and Willie Brown testified at trial that, around 9:00 p.m. on March 11, 2006, they were on the front porch of the home where Siretha's birthday party was taking place when they saw a white Cadillac and a white Grand Prix driving up the block. *Id.* at *2–6. They all testified that they saw the passenger side window of the Cadillac roll down and an individual stick his arm out of the window and begin firing a gun. *Id.* Brown testified that, when he saw the cars, he stated, "There go Mo," (in reference to Phillips's nickname "Little Mo") and that he saw Phillips stick his hand out of the passenger seat of the Cadillac and fire numerous shots at the group. *Id.* at *5.

Chicago Police Detective John Halloran recounted at trial that Jenkins, Cooks, Perdue, and Brown identified Phillips as the shooter when he interviewed them that night. *Id.* at *7. He further described that Jenkins and Cooks told him that, earlier that same day, they were in a vacant lot when a gold Ford Contour rolled up in an alley near the lot and they saw Phillips start firing a black TEC-9 in their direction. *Id.* at *1, 3. Halloran also described that Cooks and Brown identified a person named Patrick Black as the driver of the Grand Prix. *Id.* Jenkins, Cooks, Perdue, and Brown confirmed their identification of Phillips as the shooter in separate police lineups. *Id.* Various assistant state's attorneys further testified at trial that they took sworn

2

written statements from Jenkins, Cooks, and Perdue that Phillips was the shooter, both at the vacant lot and during the shooting which led to Siretha's murder, and that they testified to the same before a grand jury. *Id.* at *3–5.

At trial, however, Jenkins, Cooks, and Perdue recanted their identification of Phillips as the shooter. *Id.* at *2–4. They testified that they could not see who the shooter was because it was dark outside, and the shooter was wearing a hoodie. *Id.* They denied having told police at the station that Phillips was the shooter. *Id.* Jenkins and Cooks further recanted their identification of Phillips as the shooter at the vacant lot, instead saying they could not see who shot at them. *Id.* at *1–2. Jenkins testified that he did not pick Phillips out of a lineup. *Id.* at *2. Cooks testified that police had him sign a written statement that he did not read because he wanted to go home and that he had identified Phillips in a line up because police had asked him to identify Phillips specifically, not the shooter. *Id.* at *4. Perdue similarly stated that he did not remember his written statement and picked Phillips out of a photo array because police asked him to identify Phillips. *Id.* Jenkins's, Cooks's, and Perdue's written statements and grand jury testimonies identifying Phillips as the shooter were therefore admitted substantively into evidence under 725 ILCS 5/115-12. *Id.* at *11–12.

Chicago Police Sergeant Jose Lopez testified at trial that he conducted surveillance on the house of Felicia Phillips, Phillips's mother, on the night of the murder around 11:00 p.m. R. 35-23 at 94–96. He circled the block in his patrol car to look for a parking spot, and noticed on his second pass that there were cars parked

3

in front of the home that were not there the first time he passed. *Id.* He testified that he parked his patrol car and witnessed a group of individuals, including Phillips, run toward and into Felicia's house. *Id.* at 96–97. He indicated that he exited his vehicle and ordered them to stop, but they continued running into the house. *Id.* Kevin Phillips, Phillips's brother, and Felicia "slammed" the front door and refused to open it. *Id.* at 98–99. Lopez looked into the front window and saw Phillips moving toward the back of the house. *Id.* at 100. Lopez stated that he kicked in the door and arrested Phillips and four others, including Phillips's brother, Kevin, and Black, the person two witnesses had earlier identified as the driver of the Grand Prix during the shooting. *Id.* at 101–06.

Detective Halloran also described at trial that Black told him that Black's mother owned the Grand Prix and provided locations at which the car might be found. 2011 WL 9698895, at *7. Halloran testified the car was found near the intersection of 63rd and Bishop Streets, that Phillips was known to associate with people in that area, and that "63rd" and "Bishop" were tattooed on Phillips's arm. *Id.*

Physical evidence was also admitted at trial. According to a firearms expert, the shell casings recovered by police from the vacant lot matched the same gun as those recovered from the scene of the murder. *Id.* at *6. An expert in gunshot residue further testified that, at the time of Phillips's arrest on the night of the shooting, his hands tested positive for gunshot residue, indicating that he had discharged or handled a firearm or touched a person who had. *Id.*

4

For his defense, Phillips called Reginald Stephens and Anthony Jordan on his behalf, who both stated that, on March 11, 2006, from noon to 7:00 p.m., Phillips was with them at a home helping them to rebuild the basement, and that he used a nail gun during the work. *Id.* at *7. He called his own gunshot residue expert, who indicated that it was possible for a nail gun to produce similar residue to gunshot residue. *Id.* The state's rebuttal expert disagreed, stating that he was not aware of any nail gun ammunition manufacturer which used antimony, a substance which is required for a positive gunshot residue test. *Id.* at *8. Phillips was convicted and sentenced to 75 years imprisonment. *Id.* at *1.

## II.     Direct Appeal

On direct appeal, Phillips argued that the prosecutor improperly referenced his tattoos and a possible gang motive without supporting evidence; his trial counsel was ineffective for failing to object to the admission of prior statements by witnesses and to irrelevant testimony; and the trial court violated Illinois Supreme Court Rule 431(b), a rule that requires the trial court to ask each prospective juror whether he or she understands and accepts the presumption of innocence, the state's evidentiary burden, and the principle that a defendant need not testify or offer evidence. The state appellate court affirmed Phillips's convictions and sentence. *See id*. The court found that Phillips forfeited his claim that the trial court failed to comply with Illinois Supreme Court Rule 431(b) because he did not object at trial and did not include this argument in his post-trial briefs. *Id.* at *18–19. Nonetheless, under plain error review, the court held that the trial court's procedure for questioning jurors, which

5

consisted of the court asking whether the jurors "ha[d] any problems" with the concepts laid out in the rule, was "appropriate." *Id.* at \*16–18. Phillips filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, arguing that the prosecutor improperly referenced his tattoos and a gang motive, and that the Illinois Appellate Court erred in denying his claim that his trial counsel was ineffective for failing to object. R. 35-5. He did not include his Rule 431(b) argument. *Id.* The Illinois Supreme Court denied his Petition on September 28, 2011. *People v. Phillips*, 955 N.E.2d 477 (Ill. 2011).

### III. State Post-Conviction Proceedings

In September 2012, Phillips filed a *pro se* petition for relief from judgment under 735 ILCS 5/2-1401 in the Circuit Court of Cook County. R. 35-7; *People v. Phillips*, No. 06 CR 8512 (Cir. Ct. Cook Cty.). He asserted that his arrest violated the Fourth Amendment; his trial counsel was ineffective for failing to move to quash the arrest and investigate key facts and potential alibi witnesses; his appellate counsel was ineffective for failing to raise the Fourth Amendment violation and ineffective-assistance-of-trial counsel claim for failure to investigate on appeal; and the evidence was insufficient to convict. *Id.* at 5. The Circuit Court *sua sponte* dismissed this petition with prejudice, finding that the Fourth Amendment and ineffectiveness claims were meritless and that the sufficiency claim was both waived and meritless. R. 35-8.

On appeal from this order, Phillips argued only that the trial court prematurely denied his § 2-1401 petition because he had not properly served the State

6

with the petition and, alternatively, that any dismissal should have been without prejudice. R. 35-9; *People v. Phillips*, 2015 IL App (1st) 131010-U. The state appellate court concluded that Phillips lacked standing to challenge the lack of service of his own petition and could not benefit from his own failure to adhere to the filing requirements. *Id.* at *3. The appellate court also expressly stated that Phillips waived his substantive claims raised in the § 2-1401 petition by not arguing them on appeal. *Id.* Plaintiff's PLA to the Illinois Supreme Court appealed only the appellate court's rulings on the premature denial and denial with prejudice of his petition. R. 35-13. The Supreme Court denied the PLA in January 2017. R. 35-14; *People v. Phillips*, 77 N.E.3d 84 (Ill. 2017).

### IV. Section 2254 Petition

In 2012, concurrent with his § 2-1401 petition, Phillips also filed a *pro se* habeas petition before this Court, alleging that (1) his arrest violated the Fourth Amendment; (2) his trial counsel was ineffective for failing to: (a) move to quash his arrest, (b) investigate key facts and potential alibis, (c) object to parts of Detective Halloran's testimony, (d) object to the admissibility of the witnesses' prior statements, (e) object to the admissibility of other crimes, and (f) allow Phillips to testify at trial; (3) the evidence was insufficient to sustain a conviction; (4) the prosecution improperly referred to his tattoos and a possible gang motive in closing arguments; (5) the trial court failed to comply with Illinois Supreme Court Rule 431(b); (6) the cumulative errors in these claims denied him his right to a fair trial; and (7) his appellate counsel on direct appeal was ineffective for failing to raise some of the above

7

claims. R. 1. The case was stayed for nearly seven years while Phillips pursued his § 2-1401 petition for relief from judgment in the state courts. R. 6. Respondent filed its answer to Phillips's habeas petition in August 2019. R. 34. Phillips, who had by this time retained counsel, then sought another stay so that he could pursue additional proceedings in state court "relative to anticipated claims that are not specifically raised in this . . . proceeding," which this Court denied because he had not shown good cause for a stay. R. 50, 58.

In Petitioner's counseled reply brief, he withdrew all of the claims set forth in his original *pro se* petition, save the following claims: that his trial counsel was ineffective for failing to investigate and present alibi witnesses (claim 2(b)); that the evidence was insufficient to sustain a conviction (claim 3); and that the trial court failed to comply with Illinois Supreme Court Rule 431(b) (claim 5). R. 60. In support of his reply brief, he attached affidavits from his mother, Felicia, brother, Kevin, and the mother of his child, Laurie Kirkwood. R. 60-2. Each affidavit was executed in 2022. *Id.* Kevin's affidavit states that, on March 11, 2006, the day of the shooting, he and Phillips were working on a construction project at a house until about 7:00 p.m., and that they then went straight to their mother's house and Phillips never left the house that night. *Id.* Felicia's and Kirkwood's affidavits state that they witnessed petitioner arrive at Felicia's house around 6:30 p.m., and remain in their presence the entire evening, including at the time of the shooting, until police arrived. *Id.* The Court allowed Respondent to file a sur-reply in light of the new affidavits. R. 64.

**Legal Standard**

8

"Federal habeas relief from a state-court criminal judgment is not easy to come by." *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012). When a state court has adjudicated a federal claim on the merits, a federal habeas court may not grant relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In order for a federal district court to conduct habeas review, the petitioner must have first presented his federal claims at each level of the state court. 28 U.S.C. § 2254(b). A "petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). A claim can be procedurally defaulted when it is denied by the state court "based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S.Ct. 2058, 2064 (2017). Procedural default bars the court from considering the merits of the petition "unless the petitioner can demonstrate both cause for and prejudice stemming from that default," or he can establish that he is actually innocent of the crime for which he was convicted. *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977); *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)).

## Analysis

### I. Phillips's Claims Are Procedurally Defaulted

This Court cannot consider the merits of Phillips's claims because they are procedurally defaulted. Here, Phillips brought his claims for insufficient evidence to convict and ineffective assistance of trial counsel for failure to investigate and call alibi witnesses in his § 2-1401 petition for relief from judgment. He did not, however, raise the issue on appeal or in his PLA. Further, the Illinois Appellate Court clearly held that he had waived those substantive arguments by failing to raise them on appeal. 2015 IL App (1st) 131010-U, at *3 (citing Ill. S. Ct. R. 341(h)(7)) ("Because defendant has presented no argument on how his petition is meritorious, we find that he has waived this issue for review.").

"When a state refuses to adjudicate a petitioner's federal claims because they were not raised in accord with the state's procedural rules, that will normally qualify as an independent and adequate state ground for denying federal review." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (citing *Cone v. Bell*, 556 U.S. 449, 464–65 (2009)). The state appellate court's invocation of waiver is an adequate and independent state law ground for denying relief. *Richardson v. Lemke*, 745 F.3d 258, 267 (7th Cir. 2014) (agreeing with the district court that the petitioner's claim was procedurally defaulted because the Illinois Supreme Court held it was waived, and that this default was an independent and adequate state law ground for judgment); *Woods*, 589 F.3d at 376–77 (finding that petitioner's claims were procedurally defaulted because the state court's judgment on the issues rested on independent and adequate state ground of waiver); *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) ("A finding of waiver by the state postconviction court is enough to establish an

adequate and independent state ground."). Therefore, both the insufficient evidence to convict claim and the ineffective assistance of counsel claim related to counsel's failure to investigate and call alibi witnesses are procedurally defaulted. This Court is precluded from considering them on the merits absent an exception.

Similarly, Phillips's claim that the trial court violated Illinois Supreme Court Rule 431(b) is procedurally defaulted for two reasons. First, on direct appeal, the Illinois Appellate Court held that the claim was forfeited because Phillips's counsel did not object during trial, and he did not first raise the issue in his post-trial briefs. This was an independent and adequate state ground for denial. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) (Illinois's forfeiture rule is independent and adequate state law ground precluding federal review, and "limited review [for plain error] does not constitute a decision on the merits"). Second, Phillips failed to raise the claim to all three levels of state court review—it was raised on direct appeal before the Illinois Appellate Court, but it was omitted from Phillips's PLA to the Illinois Supreme Court. *U.S. ex rel. Keller v. McCann*, 553 F. Supp. 2d 1002, 1013 (N.D. Ill. 2008) ("Petitioner raised this claim on direct appeal in the Illinois Appellate Court, but not in his PLA to the Illinois Supreme Court. . . . Accordingly, this claim is procedurally defaulted."); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (requiring state prisoners to file petitions for discretionary review before state supreme courts to avoid procedural default).[2]

---

[2] Even if it were not procedurally defaulted, this claim is not cognizable. In his reply, Phillips frames this claim as an error "of constitutional magnitude [that] deprived [him] of a fair trial." R. 60 at 9. But "compliance with Illinois Supreme Court Rule

11

## II.     Excusal of Procedural Default

A court can address the merits of a procedurally defaulted habeas claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged violation of federal law, demonstrate his actual innocence, or otherwise demonstrate that not considering the claim would work a "fundamental miscarriage of justice." *See Woods*, 589 F.3d at 377. To establish cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show actual prejudice resulting therefrom, and not just the possibility of prejudice. *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). Phillips here does not point to any reason for the procedural default of his claims, nor describe any actual prejudice. He does not allege, for example, that any of the evidence was previously unknown to him, or that the ineffectiveness of his appellate counsel caused the procedural default.[3] If a petitioner fails to argue why a procedural default may be

---

431(b) is not required by the United States Constitution." *Johnson v. Williams*, No. 14 C 4196, 2015 WL 2452828, at *6 (N.D. Ill. May 20, 2015). Rather, it is a state court law relating to jury instructions and is thus "beyond the scope of federal habeas review." *Rosario v. Akpore*, 967 F. Supp. 2d 1238, 1250 (N.D. Ill. 2013) (finding Illinois Supreme Court Rule 431(b) violation was not a cognizable § 2254 claim).

[3] In his original Petition, Phillips did argue that his appellate counsel was ineffective for failing to raise on appeal the ineffectiveness of his trial counsel for failing to investigate alibi witnesses. Phillips specifically disclaimed this argument in his reply. Even if Phillips argued this was cause for the procedural default, this claim was itself procedurally defaulted because the Illinois Appellate Court held that he waived it. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."). Phillips has not described why the procedural default of that claim, too, should be excused.

12

excused, the court "cannot consider his claim[s]." *Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008); *Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) (refusing to consider whether default could be excused where petitioner did not make the argument).

Phillips also does not establish the actual innocence exception. "The actual innocence exception is merely a gateway through which a court can consider a petitioner's otherwise barred claims on their merits." *Lund v. United States*, 913 F.3d 665, 668 (7th Cir. 2019). It is available only when a petition presents new and reliable evidence of innocence "so strong that a court cannot have confidence in the outcome of the trial," such that it rebuts the "strong—and in the vast majority of the cases conclusive—presumption of guilt." *Schlup v. Delo*, 513 U.S. 298, 326, 332 n.42 (1995). To establish the requisite probability that he is actually innocent, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

In his petition, Phillips raises new evidence of innocence by reference to alibi affidavits. Even if he had invoked the actual innocence exception, he offers only the affidavits of his brother, mother, and the mother of his child,[4] who all attest, sixteen years after the fact,[5] that Phillips was in their presence the entire night of the

---

[4] Antonio Mason also submitted an affidavit in 2012, in which he stated that he arrived at Felicia's house at 10:00 p.m. on the night of the murder and was about to play cards with Phillips and others when the police arrived and kicked down the door. R. 1-1 at 46. This affidavit does not establish that Phillips could not have committed the murder.

[5] Kevin and Felicia submitted similar affidavits in 2012, six years after trial. R. 35-7 at 58–61.

13

shooting. Affidavits by close friends and family years after the event do not carry much weight and are not subscribed much reliability. And while *Schlup* does not require that actual innocence evidence be "newly discovered," Phillips fails to explain why these affidavits were not provided until years later. *Blackmon v. Williams*, 823 F.3d 1088, 1102 (7th Cir. 2016) ("[T]hey did not come forward until eight years after the murder, a substantial delay that could affect their memories and/or their credibility."); *McDowell v. Lemke*, 737 F.3d 476, 484 (7th Cir. 2013) ("Such 'eleventh hour' affidavits containing facts not alleged at trial and accompanied by no reasonable explanation for delay are inherently suspect."). Furthermore, the testimony of Sergeant Lopez that he saw Phillips run into Felicia's house around 11:00 p.m. on the night of the murder directly contradicts the affidavits, which state that Phillips never left Felicia's house that night. Lopez's testimony further established that two of the affiants, Kevin and Felicia, attempted to help Phillips evade the police by slamming the door behind him and refusing to let Lopez into the house.

And Phillips does not explain how, if a reasonable jury had considered the testimony in the affidavits, they could not have found him guilty beyond a reasonable doubt, given the plentiful evidence linking him to the crime. For example, four eyewitnesses identified him as the shooter on the night of the shooting, in written sworn statements given to the assistant state's attorney's office, in grand jury testimony, and during independent police lineups. Though three of those witnesses recanted at trial, the jury considered additional inculpatory evidence, including Brown's testimony; that Phillips was tied to an earlier shooting that same day at

14

which the same gun was used; that his hands tested positive for gunshot residue; that the Grand Prix was recovered near the same intersection at which Phillips was known to associate and which he had tattooed on his arm; and that a police officer saw Phillips run into his mother's house around 11:00 p.m. on the night of the murder. *See Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (in consideration of actual innocence argument, six alibi witnesses' affidavits were not sufficient to rebut six eyewitnesses who testified that the petitioner committed the crime) ("the probability that [the eyewitnesses] made the same error is small—considerably smaller, one would think, than the likelihood that [the petitioner's] family was willing to commit perjury to save him from . . . punishment."). Phillips has not presented sufficient evidence to rebut the *Schlup* presumption and establish his actual innocence. The Court can thus neither address the merits of Phillips's claims (or conduct an evidentiary hearing) nor excuse their default. *See Woods*, 589 F.3d at 377 ("The state court's reliance on an independent and adequate state law ground in denying a claim bars our review.").

### III. Certificate of Appealability

Rule 11(a) of the Rules Governing § 2254 Cases requires that the district court decide whether to issue a certificate of appealability (COA) when it "enters a final order adverse to the applicant." To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the district court rejects the petitioner's claim on the merits, the court should issue a certificate of appealability only if the petitioner demonstrates "that

15

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But "[w]hen the district court denies a habeas petition on procedural grounds without reaching the . . . underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. The Court finds Phillips's claims are clearly defaulted and thus the dismissal of his Section 2254 claims on procedural grounds is not debatable. Accordingly, the Court declines to issue a COA for any of Phillips's claims.

## CONCLUSION

For the foregoing reasons, Phillips's Section 2254 petition, R. 1, is denied, and the Court declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: April 26, 2023